# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1560


**JOSEPH PRESCIA, ET AL.**

**VERSUS**

**GARY O'BRIEN**


**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 110,253
HONORABLE JOHN E. CONERY, DISTRICT JUDGE

**********

## PHYLLIS M. KEATY
## JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Phyllis M. Keaty, Judges.


**AFFIRMED.**


Natalie B. Broussard
Attorney at Law
203 West Main Street, Suite 200
New Iberia, Louisiana  70560
(337) 365-9000
Counsel for Plaintiffs/Appellees:
  Joseph Prescia
  Laura Prescia


R. Michael Moity, Jr.
The Moity Law Firm
340 Weeks Street
New Iberia, Louisiana  70560
(337) 365-5529
Counsel for Defendant/Appellant:
  Gary O'Brien

**KEATY, Judge.**

In this child custody case, the father, Gary O'Brien, appeals a trial court judgment that granted joint custody to the father and the children's maternal grandparents, Joseph and Laura Prescia, with the Prescias designated as "temporary domiciliary parent(s)." The judgment ordered O'Brien to undergo a complete psychological evaluation, the results of which were to be supplied to the trial court and all counsel of record and granted him "restricted visitation" at Avec Les Enfants visitation center or at the home of the children's maternal aunt. For the following reasons, we affirm.

### Facts and Procedural History

Gary O'Brien and his deceased wife, Sherry, are the biological parents of two minor children, Brendan and Casey O'Brien. After Sherry died in 2004, the children lived with their father and spent most weekends and some evenings after school with their maternal grandparents, Joseph and Laura Prescia. For several years, these adults formed a cohesive family unit for Brendan and Casey. In 2007, O'Brien began to refuse visitations between the Prescias and the children. The Prescias filed suit against O'Brien, seeking visitation. The trial court found that visitation was warranted and established a visitation plan. The visitation plan worked well until January 2009, when O'Brien began denying visitation and phone contact to the grandparents, claiming that the children did not want to see or speak with them.

The parties filed cross motions for contempt. The parties attended several hearing officer conferences and objected to those recommendations. A rule for contempt was set and was reset. During that time, in late March 2009, O'Brien moved the minor children from New Iberia, Louisiana, to Anacoco, Louisiana, without notifying the Prescias or obtaining judicial permission for the relocation.

After a hearing on the rule for contempt, the Prescias again enjoyed visitation and telephone conversations with their grandchildren.

In 2010, O'Brien began denying visitation and telephone communication to the Prescias for a third time. They filed to have the trial court's order clarified. The matter was set for a hearing officer conference on May 17 and a rule on June 4. In late April 2010, O'Brien moved the children to Florida and enrolled them in school, again without permission from the trial court. After the fact, he told Lisa DiMarco, the children's maternal aunt, that he moved to get the children away from his wife's family and because he believed the state he had moved to did not recognize grandparents' rights to custody. He refused to tell her which state he was in. At that time, the Prescias sought custody of the children. Temporary custody was granted to the Prescias on June 4, 2010. A hearing on permanent custody was scheduled for July 23, 2010. O'Brien was denied any visitation pending the July 23, 2010 hearing unless it was supervised by DiMarco.

Shortly after the children were removed from his custody in Florida, O'Brien, who had tried to commit suicide fifteen years before and who had lost a son of a previous marriage to suicide, left a message on the children's therapist's voicemail stating that he was going to join their mother and to tell the children that he loved them. Alarmed by the implicitly suicidal nature of the message, the therapist called authorities in Florida, and O'Brien was brought to a mental health hospital. While at the hospital, O'Brien told doctors that he moved to Florida to get the kids away from their grandparents and that he suffered from depression. Although it was recommended that he undergo a psychological evaluation, he did not and was released after two days.

On July 23, 2010, after a hearing on permanent custody,[1] the trial court found O'Brien in contempt of court and sentenced him to a suspended thirty-day jail sentence. It also ordered that O'Brien have two meetings with Steven Hargrave, the children's therapist, first independently and then with the children. At that time, O'Brien stated to the trial court, "[s]o I am going to go ahead and say that they can have custody of my children because this has devastated me financially and emotionally, and I don't really see how I can take care of the kids right now." The matter was reset for August 3, 2010. After the August 3 hearing, the trial court ordered that custody of the children remain with the Prescias, that O'Brien complete a mental health evaluation, that all of O'Brien's mental health records be released to Hargrave, and that O'Brien only be allowed supervised visitation with his children.

O'Brien met with his children four times at Hargrave's office between August 2010 and December 2011. He saw the children on Christmas day for an hour or two and again in February 2011 for an hour or two on his daughter's birthday. Though he was in New Iberia the day before his son's birthday in May 2011, he did not ask to see his children. He made only one phone call to DiMarco to arrange visitation with his children between August 2010 and July 2011. He did not telephone the Prescias at all, not even to get information on the children's well-being.

On May 18, 2011, O'Brien filed a "Motion to Return Children to Father." The matter went to trial on July 21, 2011. At trial, O'Brien admitted that he had only set up four visits with his children through Hargrave, that he had not submitted to a complete psychological evaluation, and that he had seen his children

---

[1] The judgment states that the matter came before the trial court pursuant to "the Hearing on contempt" but the Judgment on Rules from June 4, 2010 indicates that "a hearing on permanent custody" was set for July 23, 2010, and there is no evidence of the custody hearing having been reset.

for a short period of time on Christmas and on his daughter's birthday in February, but had not seen them or asked to see them since that time even though he was in New Iberia the day before his son's birthday in May.

Hargrave testified that he still sees the children for therapy and they are torn; they love their father, but they also love their grandparents, and what they really want is for both sides to get along. Hargrave further testified that O'Brien has a lot of animosity toward the Prescias and that he seems to thwart the grandparents' efforts to include him in family events. When he was invited to Thanksgiving dinner, he immediately declined, asserting that he would have the children back by then. Hargrave stated that it is important for the children to have contact with the grandparents and their maternal aunt because it makes them feel connected to their mom. He stated that they are thriving with the Prescias, but with O'Brien, they only survived. He further stated that he felt that their living with O'Brien would emotionally and mentally harm the children because of the continued animosity O'Brien harbors against the Prescias. Further, Hargrave did not think that O'Brien was capable of fostering and promoting a meaningful relationship with the Prescias or DiMarco.

The Prescias and DiMarco also testified. Their testimony revealed that the Prescias have tried to get O'Brien to see the children or to visit them, but he has chosen not to. They explained that their primary and ultimate goal is for O'Brien and the children to reach a healthy reunification in the future. Further, testimony revealed that the Prescias are happy to take care of their grandchildren and are able to provide for them financially and emotionally.

Ultimately, the trial court denied O'Brien's request. It found that he was discharged from the mental health facility prematurely, as a neuro-psychiatric evaluation was ordered but never performed. It further found:

4

[H]e has demonstrated over the past three (3) years he in no way places the best interest of the children first, that he places his own selfish desire to have his children and exclude them from the lives of their grandparents first, and he has done everything within his power to accomplish that. He moved suddenly and with out [sic] notice to Anococo [sic] in the middle of the school year against the children's best interest and lied about his reasons why he moved at prior hearings. He moved again to Florida, against the children's best interest, with no real reason to move in the middle of a school year – well, toward the end of the school year with one (1) month left, which was completely against the best interest of the children. He said to Lisa (his sister-in-law) that he was moving to a state that did not recognize grandparents' rights and he had no intention of having these children see there [sic] grandparents again.

He has no credibility. He consistently attempts to mislead the Court. Numerous examples of his lack of credibility have previously been pointed out and are in the transcript of the prior hearings. Today, again, he demonstrated his lack of credibility on several occasions. He told the [sic] directly that he was moving to go see his brother who was going to Iraq; and yet, he tells the sister-in-law that he moved to Florida because it is a no-contact state with grandparents. The Court accepts her testimony as a credible. The medical records reflect that the reason he told the doctors why he was in Florida completely contradicts his testimony and says with crystal-clear clarity that he was moving to get them away from their grandparents and had nothing whatsoever to do with his brother.

. . . And in spite of all the efforts the Court has made to try to get him to see the light, go to counseling, work with the grandparents in the children's best-interest, he still adamantly refuses to do so and then blames everybody else for his problems. I don't know that anything can be done at this stage. Certainly it is going to be up to him how much contact he has with the children.

The trial court then granted the parties joint custody of the children, with the Prescias as temporary domiciliary parents. It ordered that O'Brien was to have restricted visitation to be scheduled at Avec Les Enfants or at the home of DiMarco on every other Sunday from 9:00 a.m. until 4:00 p.m. It further ordered O'Brien to submit to a psychological evaluation and allowed him to seek visitation once that evaluation was completed.

**Issues**

O'Brien is now before us on appeal, assigning three errors:

5

1. The District Court abused its discretion by perverting La. R.S. Art. [sic] 9:344 and reversing legislative intent by forcing the biological parent to have restricted visitation while giving the grandparents joint and physical custody of the children for almost two (2) years.

2. Through the use of consecutive "Temporary Order"(s), the District Court has abused its discretion by application of La. R.S. Art. [sic] 9:344 and/or La. C.C. Art [sic] 136 to violate Appellant's fundamental right to parent and raise his children.

3. Abuse of discretion and unconstitutionally Applied Louisiana Law [sic] that was meant to build family relations and respect a parent's constitutional rights.

**Standard of Review**

Appellate courts employ the "abuse of discretion" standard when reviewing custody determinations. *Dalme v. Dalme*, 09-524 (La.App. 3 Cir. 10/14/09), 21 So.3d 477, *writ denied*, 09-2560 (La. 1/8/10), 21 So.3d 477.

**Discussion**

The first two arguments asserted by O'Brien refer to La.R.S. 9:344, which allows the parents of a decedent to enjoy reasonable visitation rights with their grandchildren. Although the pleadings initially filed in this case were based on La.R.S. 9:344, the judgment that is before us on appeal specifically involves custody of the children.[2] Accordingly, these assignments are without merit. Insofar as O'Brien's second assignment of error refers to La.Civ.Code art. 136, this assignment is also without merit as this article references visitation rights of parents or grandparents not granted custody or joint custody. The judgment on appeal specifically grants joint custody to the Prescias and to O'Brien. Accordingly, any error raised based on La.Civ.Code art. 136 is without merit.

---

[2] We note that O'Brien did not appeal any of the trial court's earlier judgments concerning visitation, nor did he appeal the July 23, 2010 or August 3, 2010 judgments granting custody of the children to the Prescias. Rather, at the July 23, 2010 hearing, he acquiesced to the Prescias having custody of his children, as the proceedings had "devastated [him] financially and emotionally, and [he didn't] really see how [he could] take care of the kids right now."

6

We now turn to O'Brien's third assignment of error: that the trial court abused its discretion and "unconstitutionally applied Louisiana Law that was meant to build family relations and respect a parent's constitutional right." In Louisiana, biological parents have paramount rights to custody of their children. *Whitman v. Williams*, 08-1133 (La.App. 3 Cir. 2/4/09), 6 So.3d 852. They can only be deprived of those rights for compelling reasons. *Id*.

Louisiana Civil Code Article 131, however, grants trial courts the power to make custody determinations. Although La.Civ.Code art. 132 states that the trial court "shall award custody to the parents jointly" or to one parent if clear and convincing evidence proves that custody in one parent would be in the best interest of the child, La.Civ.Code art. 133 allows a trial court to award custody to a non-parent "[i]f an award of joint custody or of sole custody to either parent would result in substantial harm to the child."

In the instant case, O'Brien made two erratic mid-school-year moves, one to a new city and one to a new state, in the two years leading up to the grandparents obtaining custody of the children. In both instances, he failed to notify any of the children's maternal family members beforehand, and in the second instance, he refused to tell them where he had relocated. The moves occurred without permission from the trial court.

O'Brien admittedly suffers from depression and has attempted suicide before. When the children were removed from his custody, he left a voicemail message that alluded to his having suicidal thoughts. He was admitted to a hospital for psychological reasons, where he admitted to suffering from depression and to moving out of state to keep the Prescias away from the children. Although a neuro-psychological evaluation was ordered, there is no evidence of it having been

performed. He has not submitted to psychological testing since his release from the hospital despite court orders mandating that he do so.

At the July 2010 hearing on custody, O'Brien voluntarily gave custody of the children to the Prescias, admitting that he was unable to care for them. The trial court ordered that he undergo a psychological evaluation and ordered supervised visitation. He did not submit for psychological evaluation. He has not made sufficient efforts to see his children.

Conversely, the Prescias have emotionally and financially supported their grandchildren, especially since they were awarded custody. They provide a stable and loving home. They take the children to regular counseling sessions. They check with the children's therapist to make sure that certain actions (such as showing the children home movies of their mom) would not upset them. They invite O'Brien to family holiday events. They give the children birthday parties and more.

In *Carroll v. Carroll*, 476 So.2d 976 (La.App. 1 Cir. 1985), the court found that proof of stability and a wholesome environment in the grandmother's home coupled with evidence that removing the children from her home would not be in the children's best interest was sufficient to support the trial court's award of custody to the grandparents. In its discussion of that case, the first circuit stated "a parent now enjoys a paramount right of custody which can be outweighed by a sufficiently grave detriment to the child's best interest, present in awarding custody to that parent, which requires that custody be awarded to a nonparent." *Id*. at 981.

It is clear to this court that O'Brien has a propensity to disregard the orders of the trial court and to act rashly without considering the best interest of his children. He continually denied visitation to the Prescias, in absolute disregard of the trial court's order. He moved twice in the middle of the school year, uprooting

his children and enrolling them in new schools each time. This was done with obvious disregard for how the move would affect the children. He has a history of depression and suicide attempts and threats, yet has not undergone a psychological evaluation that would assist the trial court in determining if he is able to care for his children.

In addition to his failure to submit for psychological testing and denying the Prescias visitation, O'Brien has also failed to maintain regular and reliable visitation with his children. At the initial hearing on custody in July 2010, O'Brien voluntarily "gave" custody of his children to the Prescias, admitting to the trial court that he was unable to care for them. Once the children began living with the Prescias, O'Brien visited them six times, and each of those visits occurred before March 2011. After March 2011, O'Brien did not visit, or ask to visit, his children, even when he was in the same town. O'Brien did not communicate with the Prescias about the children and only spoke with the approved visitation supervisor once in nearly a year.

## Conclusion

After carefully reviewing the record, we find no error with the trial court's decision to award joint custody to O'Brien and the Prescias, to designate the Prescias as the domiciliary parents, to allow O'Brien restricted visitation, and to require that O'Brien submit to a psychological evaluation. We note that in the judgment before us on appeal, the trial court has also allocated that O'Brien may petition the trial court for visitation rights once the psychological evaluation has been completed. Costs of this appeal are assessed against appellant, Gary O'Brien.

**AFFIRMED.**